1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   UNITED STATES OF AMERICA,                    No. CR 05-0375 SI
                                                 No. CV 10-04801 SI
9              Plaintiff,

10     v.                                        **ORDER DENYING PETITION
                                                 FOR WRIT OF HABEAS CORPUS AND
11  EDWARD WOOK SUNG PARK,                       DENYING CERTIFICATE OF
                                                 APPEALABILITY**
12             Defendant.
                                          /
13

14          Petitioner Edward Wook Sung Park, an inmate at Adams County Correctional Institute, Natchez,

15  Mississippi, filed this *pro se* motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C.

16  § 2255, claiming ineffective assistance of counsel.  For the reasons discussed below, the petition is

17  DENIED.

18

19                                   **BACKGROUND**

20          On June 16, 2005, petitioner and nineteen co-defendants were indicted on three counts in *United*

21  *States v. Chan, et al.*, Case No. CR 05-375 SI.  Docket No. 1.[1]  On June 15, 2006, a second superseding

22  indictment was filed, charging petitioner with the following: one count of conspiring to traffic in 1,000

23  or more marijuana plants, in violation of 21 U.S.C. §§ 846 and 841(a) & (b)(1)(A) (Count 1); one count

24  of cultivating/possessing with intent to distribute 1,000 or more marijuana plants, in violation of 21

25  U.S.C. § 841(a) & (b)(1)(A) (Count 18); four counts of cultivating/possessing with intent to distribute

26  100 or more marijuana plants, in violation of 21 U.S.C. § 841(a) & (b)(1)(B) (Counts 4, 6, 22, 26); three

27  counts of maintaining a place for cultivating and distributing marijuana, in violation of 21 U.S.C. §

28  _____
    [1]  Unless otherwise stated, all docket references are to CR 05-375 SI.

**United States District Court**
For the Northern District of California

856(a) (Counts 3, 5, 9); and one count of conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h) (Count 27).  Docket No. 374.

Petitioner was represented by J. Tony Serra and Anna Ling.  Petitioner's lawyers filed a number of pretrial motions, including a successful motion to suppress a search of his cell phone.  Docket No. 664.  On April 28, 2009, the Court held a final pretrial conference in petitioner's case.  Docket No.1076.  On May 7, 2009, petitioner filed a written plea agreement, entered into under Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure.  Docket No. 1082.  The plea agreement called for a prison term of 87 months and four years of supervised release.  On the same day, petitioner appeared before the Court and, after a plea colloquy, entered guilty pleas to Counts 6, 22, and 26 (marijuana counts carrying mandatory five-year terms) and Count 27 (money laundering conspiracy count).  Docket No. 1084 (May 7, 2009 Minute Entry); Docket No. 1289 (transcript of plea colloquy).

On October 16, 2009, the Court sentenced petitioner to 87 months on all counts, to be served concurrently.  Docket No. 1142 (October 16, 2009 minutes).  In doing so, the Court relied upon the parties' submissions and declined to follow the Presentence Report's recommendation of a guidelines range of 135-168 months.  Docket No. 1275 (transcript of October 16, 2009 sentencing hearing).  The Court entered judgment on October 26, 2009.[2]  Docket No. 1145.  All remaining counts, including those carrying a mandatory minimum ten-year sentence, were dismissed pursuant to the plea agreement.  Docket No. 1146.

On October 20, 2010, petitioner filed this motion under 28 U.S.C. § 2255.  Petitioner claims ineffective assistance of counsel due to a conflict of interest, as well as counsel's failure to file certain motions and make certain arguments at the sentencing hearing.  Petitioner also claims, *inter alia*, that he did not enter his guilty plea and plea bargain agreement knowingly and voluntarily, that he was not informed that drug type and quantity were elements of the offense, and that he was unaware of any possible deportation consequences of his plea.

---

[2] Judgment was later amended on October 27, 2009 to correct a clerical error.  Docket No. 1146.

**STANDARD OF REVIEW**

A prisoner in custody under sentence of a federal court who wishes to attack collaterally the validity of his conviction or sentence must do so by filing a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 in the court which imposed the sentence. Under § 2255, the federal sentencing court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the court finds that relief is warranted under § 2255, it must "vacate and set the judgment aside," and then one of four things: "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *see also United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (citations omitted).

**DISCUSSION**

**I.      Counsel's alleged conflict of interest**

Petitioner argues that two conflicts of interest rendered defense counsel J. Tony Serra's assistance ineffective. First, petitioner contends that Mr. Serra had a conflict of interest because the United States Attorney's Office in the Northern District of California previously prosecuted Mr. Serra for an unrelated tax matter. Second, petitioner claims that the simultaneous representation of petitioner's co-defendants by other members of Mr. Serra's "law firm" created a conflict of interest.

The terms of petitioner's plea agreement include a waiver of § 2255 claims except in connection with the negotiation of the plea agreement. Docket No.1082 at 5. The plea agreement specifically states that petitioner "agree[s] to give up [his] right to appeal [his] convictions, the judgment, and orders of the Court. [Petitioner] also agree[s] to waive any right [he] may have to appeal any aspect of [his] sentence, including any orders relating to forfeiture and restitution." *Id.* The plea agreement further provides that petitioner "agree[s] to waive any right [he] may have to file a collateral attack on [his] convictions or sentence, including a petition under 28 U.S.C. § 2255 . . . at any time in the future," except for a claim that his constitutional right to effective assistance of counsel was violated in

connection with the negotiation of the agreement.  *Id.*

Because petitioner's claims of alleged conflict of interest precede and potentially affect the legitimacy of the waiver, the Court addresses those claims first.

## A.      Federal prosecution of J. Tony Serra

On March 21, 2005, the government charged Mr. Serra with two misdemeanor counts of willful failure to pay income tax.  *United States v. Serra*, CR 05-0171-JCS (N.D. Cal.).  Docket No. 1294-7 (docket sheet in *United States v. Serra*).[3]  On April 5, 2005, Mr. Serra was arraigned, and he entered a plea that same day.  *Id.*  Mr. Serra's guilty plea on April 5, 2005 preceded petitioner's initial indictment on June 16, 2005.  On July 29, 2005, Mr. Serra was sentenced to ten months' custody and $100,000 in restitution, but no supervised release was included.  Docket No. 1294-7.  Mr. Serra self-surrendered on May 15, 2006.  *Id.*  He was released from custody on March 13, 2007.  Docket No. 1295 ¶ 3 (Scoble Decl.).  Both Mr. Serra and Anna Ling were petitioner's attorneys-of-record.  During Mr. Serra's custody period, Ms. Ling continued to appear for petitioner alone, until Mr. Serra again appeared for him at the June 8, 2007 status conference.

Petitioner contends that Mr. Serra's prosecution created a conflict of interest.  Petitioner alleges that Mr. Serra's "conflict of interest adversely affected the defense of the case whereas counsel and Petitioner had agreed to proceed to trial and counsel waited until the last day to advise Petitioner to accept the government's plea bargain and plea guilty to the charge filed."  Pet. Mem. at 6.  Petitioner asserts that "Arguably, had counsel Serra not been under pressure from the U.S. Attorney's Office during his representation of Petitioner, it is quite possible that counsel Serra would have chosen another strategy in this case."  *Id.* at 7.  Petitioner also asserts that "Because of counsel's arrest and conviction, counsel clearly wanted to receive a good plea bargain from the U.S. Attorney's office and serve the less possible prison time."  *Id.* (footnote omitted).

Representation of a criminal defendant includes a duty to avoid conflicts of interest. *Cuyler v.*

---

[3]   In opposition to Mr. Park's § 2255 motion, the government has filed an appendix of documents, found at Docket Nos. 1293 & 1294.  The appendix includes documents from the criminal case against Mr. Park, the criminal case against Mr. Serra, and documents from *United States v. Schafer*, CR 05-238-FCD (E.D. Cal.), discussed *infra*.

United States District Court
For the Northern District of California

*Sullivan*, 446 U.S. 335, 346 (1980). *Cuyler v. Sullivan* sets forth the standard for a conflict-of-interest claim: a petitioner must show "that a conflict of interest actually affected the adequacy of his representation." *Id.* at 348-49. An "actual conflict of interest" only occurs when counsel "actively represented conflicting interests." *Id.* at 350. This actual conflict must have "affected counsel's performance" and not exist as "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). A petitioner therefore must show that his counsel actively represented conflicting interests before he can establish the constitutional predicate of a Sixth Amendment claim. *See Cuyler*, 446 U.S. at 350; *see, e.g., Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997) (potentially divided allegiances do not constitute active representation of conflicting interests and therefore do not constitute constitutional violation). A petitioner must prove an actual conflict through a factual showing in the record. *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).

The Court concludes that petitioner's claim lacks merit. As a factual matter, petitioner's assertion that both he and Mr. Serra were prosecuted by the same office, thus creating a conflict of interest, is incorrect. Assistant United States Attorney Andrew M. Scoble, one of the AUSAs with principal responsibility for the prosecution of defendant, has filed a declaration stating that he has spoken to the attorneys of record who prosecuted Mr. Serra. Docket No. 1295 ¶ 2. Mr. Scoble states, "[t]hey both informed me that they prosecuted the case while employed by the Department of Justice, Tax Division, and that the U.S. Attorney's Office for the Northern District of California had recused itself from the prosecution of Mr. Serra [and] they therefore prosecuted the case without direction from the U.S. Attorney's Office for the Northern District of California." *Id*. Mr. Scoble also states, "[t]hey also informed me that Mr. Serra's plea agreement called for his cooperation with the IRS in paying the taxes he owed, but that otherwise Mr. Serra did not provide, nor offer, nor discuss, any cooperation with the government – including specifically any cooperation against or in connection with defendant Edward Wook Sung Park." *Id*. Thus, the U.S. Attorney's Office for the Northern District of California played no role in Mr. Serra's prosecution.

Even if Mr. Serra and petitioner were prosecuted by the same office, petitioner has not shown that Mr. Serra had an "actual conflict of interest." Mr. Serra finished serving his sentence in March

United States District Court
For the Northern District of California

2007, over one year before petitioner's case was set for trial,[4] and over two years before petitioner pled guilty pursuant to the plea agreement. Mr. Serra's case was completed well before negotiating petitioner's plea bargain agreement, and thus Mr. Serra did not actively represent any potentially conflicting interests during the negotiation process. The record before the Court shows that Mr. Serra's own plea bargain with the government did not involve petitioner's case, and Mr. Serra made no promises to cooperate with the government in any way except to pay the taxes he owed. Docket No. 1295 ¶ 2. The Ninth Circuit has held that a petitioner's "bare allegation of conflict based solely" upon counsel's "cooperation and plea on unrelated charges in another federal district is, by itself, an insufficient basis on which to predicate an actual conflict for the purposes of establishing a violation of the right to conflict-free counsel." *United States v. Baker*, 256 F.3d 855, 862 (9th Cir. 2001).

### B. Multiple representation as a conflict of interest

Petitioner also alleges that Mr. Serra had a conflict of interest because several of petitioner's co-defendants were represented by attorneys who worked at "the same" office as Mr. Serra, Pier 5 Law Offices. Petitioner asserts that attorneys from the Pier 5 "firm" were paid different amounts of money by their clients, and that counsel who received more money worked "in a better way" on behalf of those clients, including during plea negotiations. Pet. Mem. at 10.

Petitioner is unable to show that there was a actual conflict of interest based on the fact that Mr. Serra and other lawyers associated with Pier 5 Law Offices represented multiple co-defendants in this case. Other courts have found that while lawyers at Pier 5 Law Offices share office space and costs, the lawyers are not a "law firm." In *United States v. Schafer*, CR S-05-0238-FCD, the U.S. Attorney's Office for the Eastern District of California moved to disqualify Mr. Serra and attorney Laurence Lichter based on their association together at the Pier 5 Law Offices. *United States v. Schafer*, CR S-05-0238-FCD, 2006 WL 3271290 (E.D. Cal. Nov. 12, 2006). Judge Damrell adopted Magistrate Judge Drozd's Finding and Recommendations, which found that Pier 5 is a "community of sole practitioners who do

---

[4] On August 1, 2008, petitioner's case was set for trial to begin on February 2, 2009. Docket No. 854. The February 2, 2009 trial date was subsequently continued to May 18, 2009. Docket No. 973.

United States District Court

For the Northern District of California

not share the files or confidences of their individual clients with one another," *id*. at *10 (Docket No. 1294-4), and denied the government's motion to disqualify.  Docket No. 1294-6.[5]  The government also notes that there are a number of other cases in which Pier 5 Law Offices attorneys were not disqualified for conflict of interest based on multiple representation.  *See* Docket No. 1294-5 (listing cases).  In addition, the Ninth Circuit has ruled that representation of two criminal co-defendants by lawyers associated in the same firm does not automatically create a presumption of prejudice.  Rather, district courts should operate under a presumption "'that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client.'"  *Lambert v. Blodgett*, 393 F.3d 943, 986 (9th Cir. 2004) (quoting *Burger v. Kemp*, 483 U.S. 776, 784 (1987)).

Petitioner also has failed to establish any possible adverse effects based on the alleged conflict of interest.  Petitioner asserts that different attorneys were paid different amounts, and that the attorneys who were paid more worked harder for their clients and negotiated more favorable plea agreements.  However, petitioner does not identify any specific attorney or co-defendant, nor has petitioner submitted any evidence  in support of this assertion.

Finally, petitioner asserts that the Court should have notified him about a potential conflict of interest resulting from multiple representation.  Pet. Aff. at ¶ 5; Petitioner's Traverse to Government's Response ("Pet. Tra.") at 8.  However, "[u]nless a trial court knows or reasonably should know that a specific conflict exists, the court need not initiate an inquiry."  *Cuyler*, 446 U.S. at 347; *see also United States v. Allen*, 831 F.2d 1487, 1495-96 (9th Cir. 1987), *cert. denied*, 487 U.S. 1237 (1988).  Here, there was no basis for the Court to know or reasonably know of any potential conflict.

## II.    Waiver of § 2255 claims

The Court now turns to the issue of petitioner's waiver of all potential § 2255 claims other than a claim for ineffectiveness of counsel in negotiating the plea agreement.

---

[5]  However, Judge Damrell was troubled by the ethical issues raised by the Pier 5 Law offices' communications with the public, such as advertisements, business cards, and references to the lawyers as "partners."  *Id.*

**A.      The plea agreement and colloquy**

The written plea agreement signed by petitioner contains express waivers of petitioner's right

to appeal or make collateral attacks through a § 2255 motion:

> 4. I agree to give up my right to appeal my convictions, the judgment, and orders of the Court.  I also agree to waive any right I may have to appeal any aspect of my sentence, including any orders relating to forfeiture and restitution. . . .
>
> 5. I agree to waive any right I may have to file any collateral attack on my convictions or sentence, including a petition under 28 U.S.C. § 2255 . . . at any time in the future after I am sentenced, except for a claim that my constitutional right to the effective assistance of counsel was violated in connection with the negotiation of this Agreement. . . .

Docket No. 1082 at 5:7-26.  Petitioner further affirmed:

> 16. I confirm that I have had adequate time to discuss this case, the evidence, and this Agreement with my attorney, and that he has provided me with all the legal advice that I requested.
>
> . . .
>
> 18. I confirm that my decision to enter the guilty pleas is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial.  I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement."

*Id.* at 9:3-5, 8-11.

Petitioner's counsel also confirmed in the written plea agreement: "I have fully explained to my

client all the rights that a criminal defendant has and all the terms of this Agreement.  In my opinion,

my client understands all the terms of this Agreement and all the right s/he is giving up by pleading

guilty, and, based on the information now known to me, his/her decision to plead guilty is knowing and

voluntary." *Id.* at 9:22-25.

At the May 7, 2009 hearing, petitioner verbally affirmed his acceptance of the plea agreement's

terms.  After being sworn in, petitioner verified that he had enough time to discuss the charges against

him with his counsel, that defense counsel had explained the elements of the offenses, and that he was

satisfied with his representation.  Docket No. 1289 at 3:17-25.  The Court explicitly discussed the appeal

and § 2255 waiver provisions with counsel and petitioner.  To ensure that petitioner thoroughly

understood the terms of the waivers, the Court sought clarification from the government that, pursuant

to the terms of the plea agreement, should petitioner attempt to appeal despite waiving his right to do

United States District Court
For the Northern District of California

so, the government would be free to reinstate all charges and include any other charges for which the statute of limitations had already run. *Id*. at 8:3-10:18.  Moreover, the Court addressed both defense counsel and petitioner separately to ensure that petitioner understood the terms of the plea:

> THE COURT: Have you had a chance to explain that all to your client, Mr. Serra?
>
> MR. SERRA: I took a very strong view.  He's giving up his right to appeal, other than for alleged incompetency of counsel.  And the way I explained, 2255 and 2241, trying to [use] lay language, there's no habeas corpus rights that he has.  He's also giving that up.  He understands that.  I respect what the Court points out: There seems to be a very large backup position here should he appeal, but I don't believe he's going to appeal based on the agreement and based on my advice to him.
>
> THE COURT: Okay.  Well, and you have – you've gone over this with him?
>
> MR. SERRA: Oh, yeah.  We've read every portion of this agreement together.
>
> BY THE COURT:
>
> Q. What Miss Kim is saying here, sir, is that you can't appeal.  If you should appeal, then all kinds of bad consequences are going to kick in based on this agreement. Including that all the charges that were out there could get reinstated.  If there are other charges out there that they could have filed against you that maybe it was too late to file them, they could then file them, so things would be a lot worse than they were before you left this court if you were to try to appeal.  Do you understand that?
>
> A. Yes, your Honor.
>
> Q. Okay.  And, as Mr. Serra just mentioned, you can't file any type of habeas corpus petition for any reason except a claim that your lawyer was ineffective.  Do you understand that?
>
> A. Yes, your Honor.

*Id*. at 9:19-10:22.

At the Court's request, the government then outlined the facts it was prepared to prove at trial, including the facts that the type of drug involved was marijuana and that petitioner was responsible for approximately 590.5 kilograms of marijuana.  *Id*. at 13:21 -14:22.  When questioned, petitioner agreed that the government's allegations were true and that he admitted them:

> Q. Tell me what you did that makes you guilty of these offenses?
>
> . . .
>
> A. I did whatever Enrique Chan told me to do, ran errands for him.  I ran errands for Enrique Chan.
>
> Q. Well, did you agree with others to cultivate and possess and distribute marijuana?

9

A. Yes, your Honor.

Q. And did you cultivate and distribute marijuana for profit?

A. Yes, your Honor.

Q. And did you help set up and work at some of the grow sites?

A. Yes, your Honor.

Q. And did that include the sites at 335 Jones, 1555 McKinnon and 274 Curtis?

A. Yes, your Honor.

Q. And do you agree that attributable to you is 590.5 kilos of marijuana?

A. Yes, your Honor.

Q. And did you use some of the proceeds and profits to buy other supplies to keep the grow sites going?

A. Yes, your Honor.

Q. Did you engage in financial transactions using cash provided by Enrique Chan?

A. Yes, your Honor.

. . .

Q. Did you sometimes buy money orders with the money that you got through Enrique Chan?

A. Yes, your Honor.

*Id.* at 15:6-16:14.  The Court then found that petitioner was pleading guilty because he was guilty, that there was a factual basis for petitioner's guilty plea, and that his plea was being freely and voluntarily given.  *Id.* at 17:7-10.

**B.      Analysis**

**1.      The waiver was express**

A defendant's waiver of his right to appeal and to make a § 2255 motion is valid if the defendant consented to express terms knowingly and voluntarily.  *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).  When evaluating such waivers under plea agreements, courts apply contract principles, such as the parol evidence rule.  *Nunez*, 223 F.3d at 958.  "Under the parol evidence rule, a

court looks to, and enforces, the plain language of a contract and does not look to 'extrinsic evidence . . . to interpret . . . the terms of an unambiguous written instrument.'" *Id.* (quoting *Wilson Arlington Co. v. Prudential Ins. Co. of Am.*, 912 F.2d 366, 370 (9th Cir. 1990)).

The Court finds that the waivers in the plea agreement were express. The written plea agreement explicitly stated that petitioner relinquished his rights to appeal his "convictions, the judgment, and orders of the Court" and "any aspect of my sentence." Docket No. 1082 at 5 ¶ 5. The agreement further included petitioner's assent to "waive any right I may have to file any collateral attack on my convictions or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at any time in the future after I am sentenced, except for a claim that my constitutional right to the effective assistance of counsel was violated in connection with the negotiation of this Agreement." *Id.*

### 2.    The waiver was made voluntarily and knowingly

A plea agreement may not waive any claims that the waiver itself was involuntary or the result of ineffective assistance of counsel. *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005). A petitioner who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the plea by proving that counsel's advice was not within the range of competence required of criminal defense attorneys. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The *Strickland* standard of review for ineffective assistance of counsel applies to the instant situation. *Strickland v. Washington*, 466 U.S. 668, 688-92 (1984).

Petitioner challenges the validity of the appeal waiver generally, but does not mention the waiver in the context of a § 2255 motion. Pet. Memo. at 19-22. Petitioner argues that his counsel failed to inform him of the consequences of the appeal waiver and instead only advised "that Petitioner had no option other than to accept and sign that plea agreement to receive less prison time." *Id.* at 19-20. Petitioner claims that counsel's performance was deficient because counsel "just asked and instructed Petitioner to sign the agreement without a full explanation of all the facts contained." *Id.* at 21. Petitioner asserts that if he understood the consequences of the appeal waiver, he would have rejected the plea bargain agreement, or at least rejected the appeal waiver provision. *Id.* at 21-22.

The record does not support petitioner's assertions.  Contrary to petitioner's claims and as already discussed, the plea agreement unequivocally stated that petitioner signed the agreement after having adequate time to discuss his situation with his counsel, and that his counsel gave him all the legal advice he requested.  The plea agreement also contained a signed statement by defense counsel stating that counsel had explained to petitioner all of petitioner's rights and the terms of the agreement, and that counsel believed petitioner understood all the terms and rights he was giving up by pleading.  Docket No. 1082 at 9.

Furthermore, at the plea colloquy, petitioner represented to the Court under oath that he fully understood the appeal waiver provision.  Sworn statements in open court are presumed to be truthful, and a court should summarily dismiss "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.").  Applying these rules, petitioner's sworn statements in the written plea agreement and before the Court must be presumed truthful.  Petitioner's assertion that counsel did not explain to him the consequences of the appeal waiver provision is contradicted by the rest of the record before the Court, and is insufficient to outweigh the presumption of truth.

Accordingly, the Court finds that petitioner's waiver was express and knowing and voluntary, therefore the waiver is hereby enforced.

**III.    Even if petitioner had not waived his claims, petitioner's ineffective assistance claims fail**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland*, 466 U.S. at 686.  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the proceedings cannot be relied upon as having produced a just result.  *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must

establish two things. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In satisfying the first prong, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

On the prejudice prong, petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 688. The test for prejudice is not outcome-determinative, *i.e.*, defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient. *Id.* at 693. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient. *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir.), *cert. denied*, 498 U.S. 960 (1990); *see also Rios v. Rocha*, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Here, petitioner contends that he received ineffective assistance of counsel because Mr. Serra failed to do the following: (1) file a suppression motion or a motion to dismiss; (2) fully inform him of the factual basis of his guilty pleas; (3) inform petitioner that drug type and quantity were elements of the offense; (4) make specific challenges at the sentencing stage of proceedings; and (5) file an appeal. Pet. Memo. at 10, 13, 16, 18, 22, 24, 26, 29, 32.[6]  Petitioner's claims are unrelated to the negotiation of the plea bargain agreement and are therefore precluded by the waiver, which the Court has found enforceable.  However, even if the Court did not enforce the waiver, petitioner's claims fail to meet the *Strickland* standard.

### A.    Failure to move to suppress evidence

Petitioner argues that his counsel acted unreasonably by failing to move to suppress evidence seized during a warrantless search of 226 Irving Street, San Francisco, California.   In order to establish ineffective assistance of counsel based on defense counsel's failure to litigate a Fourth Amendment issue, petitioner must show that: (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence. *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  Failure to file a meritorious suppression motion does not constitute *per se* ineffective assistance  of counsel. *Kimmelman*, 477 U.S. at 384.

The Court finds that petitioner's claim lacks merit because if counsel had filed a motion to suppress the evidence seized at 226 Irving, the Court would have denied it based on lack of standing. Petitioner's co-defendant Enrique Chan, who the Court found had standing to challenge the seizure, successfully moved to suppress the evidence in question.  Docket No. 575.  However, the Court held

---

[6] Petitioner also appears to assert that counsel was ineffective by "failing to advise and apprise Petitioner of the advantages and disadvantages of the government's first plea agreement offer of 60 months of imprisonment and did not explain any consequences if the offer is rejected at the time the government made the offer." Pet. Mem. at 35.  Neither petitioner's memorandum nor traverse develop this assertion, and petitioner has not submitted any evidence in support of this claim.  Petitioner's affidavit does not discuss any supposed offer of 60 months.  AUSA Nicole Kim, the AUSA with principal responsibility for, *inter alia*, negotiating the plea agreement, has filed a declaration stating that she is not aware of any plea offer by the government to petitioner that called for a 60 month sentence. Docket No. 1296 ¶ 4.

1   that co-defendants David Lee and Darrick Hom lacked standing to join Chan's motion, and denied the

2   motion as to those defendants.  *See id*. at 1 n.1; *see also United States v. Padilla*, 508 U.S. 77, 82 (1993)

3   (per curiam) (holding that defendant does not automatically have reasonable expectation of privacy

4   simply as result of his status as coconspirator); *United States v. Lingenfelter*, 997 F.2d 632, 363 (9th Cir.

5   1993) (ruling that coconspirators "must demonstrate that their *own* expectations of privacy or property

6   interests were violated by the challenged police conduct") (emphasis in original).  Petitioner does not

7   dispute that he was neither a resident nor an owner of 226 Irving Street, and he does not assert any basis

8   upon which he would have standing to challenge the search.

9

10          **B.      Failure to move to dismiss the conspiracy charged**

11          Petitioner alleges that counsel acted unreasonably by not moving to dismiss the conspiracy

12   charge against him because the charge was multiplicitous.  Petitioner argues that the indictment

13   "charged violations of the same general conspiracy statute in different Counts" and that counsel would

14   have been successful in such a motion.  Pet. Mem. at 13-15.

15          Defense counsel's failure to bring a motion to dismiss was not ineffective assistance because the

16   motion would have been unlikely to succeed.  Courts regard conspiracy and the underlying substantive

17   offense as separate crimes for double jeopardy purposes.  *See United States v. Felix*, 503 U.S. 378, 389

18   (1992); *Garrett v. United States*, 471 U.S. 773, 778 (1985); *Iannelli v. United States*, 420 U.S. 770, 777-

19   779 (1975).  Therefore the charge of conspiracy to traffic in 1,000 or more marijuana plants (Count 1)

20   and the substantive charges of cultivation and possession thereof with intent to distribute (Counts 4, 6,

21   18, 22, and 26) were not multiplicitous.  Moreover, petitioner cannot demonstrate prejudice.  Under the

22   plea agreement negotiated by defense counsel, petitioner pled guilty to Counts 6, 22, and 26 in exchange

23   for dismissal of all remaining charges, including Count 1.

24

25          **C.      The record shows that petitioner understood factual basis of his guilty pleas**

26          Petitioner contends that his guilty plea was not made knowingly and voluntarily and that his

27   counsel acted unreasonably in advising petitioner to plead guilty when there was no factual basis for

28   doing so.  Petitioner states that his counsel failed to "explain to Petitioner what constituted the basis for

the plea of guilty and what was a potential defense, in case, the case proceed[ed] to a jury trial" and to inform petitioner on "the factual basis for the government accusations of the conspiracy charged and alleged by the government in the Indictment." Pet. Mem. at 16. Petitioner further asserts that the Court "did not evaluate as to whether the conduct to which petitioner admitted was, in fact, an offense under the statutory provisions of a conspiracy." *Id.* Petitioner challenges the validity of the indictment "since the conduct charged was not illegal in the state of California, for which Petitioner informed his counsel that he was not guilty of the offense charged." *Id.* at 17. *See also id.* n.8 (stating that petitioner's actions were lawful under California's medical marijuana laws).

Plaintiff's claims lack merit. Petitioner's sworn statements in the written plea agreement and at the plea colloquy belie his claims. Petitioner clearly agreed that there was a factual basis for his guilty pleas and that he had reviewed them with his attorney. *See* Docket No. 1082 at 3-4 (plea agreement: reviewing petitioner's knowledge and conduct and stating that "the facts set forth above are intended as the factual basis for my guilty pleas"); Docket No. 1289 at 11:7-14 (at plea colloquy, petitioner's representation that he had signed plea agreement and reviewed it with defense counsel beforehand); *id.* at 10:4-12:2 (defense counsel's assurance that "We've read every portion of this agreement together" and that petitioner "has read over the factual allegations and has agreed that they are true and correct"); *id.* at 13:18-14:22 (government's summation of factual basis it was prepared to prove at trial); *id.* at 15:2-17:3 (petitioner's admission that he heard government's summation of factual basis and agreed with it). Moreover, petitioner's belief that his conduct was permissible under California law is immaterial, because petitioner faced federal prosecution, not state.[7] *See generally Gonzales v. Raich*, 545 U.S. 1 (2005).


**D.      Petitioner was informed that drug type and quantity are elements of the offense**

Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), petitioner claims that defense counsel acted unreasonably by not informing him that drug type and quantity were elements of the offense that

---

[7] Petitioner's co-defendants' unsuccessfully moved to dismiss the indictment based upon this precise argument. *See* Docket No. 559 (Order Denying Motion to Dismiss Filed by Defendants Lee, Hom and Wong).

**United States District Court**
For the Northern District of California

1   the government must prove beyond a reasonable doubt at trial. Petitioner alleges that his plea was not

2   made knowingly and voluntarily, and that if counsel had so informed him, petitioner would have instead

3   opted for a "trial to prove the drug quantity to which he was being held responsible." Pet. Mem. at 19.

4         Petitioner's claim is belied by the record in this case. In his plea agreement, petitioner stated

5   that he understood that the counts to which he pled guilty involved marijuana plants and that he

6   willingly gave up his "right to require the Government to prove to a jury beyond a reasonable doubt the

7   quantity of drugs charged." Docket No. 1082 at 3-4. In addition, petitioner stipulated in the signed plea

8   agreement and at the plea colloquy that he was responsible for 590.5 kilograms. *Id.* at 3; Docket No.

9   1289 at 15:23-25. At the plea colloquy, petitioner declared under oath to the Court that his counsel had

10  "explained to [him] the elements of the offenses that are involved in this case" and that he was satisfied

11  with his attorney's representation. *Id.* at 3:20-25. Defense counsel stated that he and petitioner had

12  "read every portion of this agreement together." *Id.* at 10:4-7. Petitioner also stated that he understood

13  that if he chose not to plead guilty, the government would be required to prove "beyond a reasonable

14  doubt that [he was] guilty of every element of these offenses beyond a reasonable doubt." *Id.* at 6:8-15.

15  Sworn statements in open court are presumed to be truthful, and "[s]tatements made by a defendant

16  during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking

17  the plea." *Blackledge*, 431 U.S. at 74; *Ross*, 511 F.3d at 1236.

18        In addition, petitioner cannot show prejudice as a result of the alleged *Apprendi* error. Petitioner

19  admitted to the Court that he cultivated and distributed marijuana for profit, and he admitted the drug

20  quantity of 590.5 kilograms of marijuana. The Court sentenced petitioner to 87 months using the

21  guidelines calculations recommended by the parties, rather than the higher guidelines calculations

22  recommended by the Probation Office. Petitioner's sentence of 87 months was well below the statutory

23  maximum penalty of twenty years.

24

25        **E.**    **Counsel's failure to make challenges at the sentencing stage**

26        The Supreme Court has not decided what standard should apply to counsel's performance in

27  non-capital sentencing proceedings. *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir.), *cert.*

28  *denied*, 546 U.S. 944 (2005). *Strickland* declined to "'consider the role of counsel in an ordinary

sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 686). Consequently, there is no clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the noncapital sentencing context. *See Davis v. Grigas*, 443 F.3d 1155, 1158-59 (9th Cir. 2006); *Cooper-Smith*, 397 F.3d at 1244-45.

Petitioner asserts that counsel acted ineffectively at the sentencing hearing by failing to argue for a downward departure based on drug quantity and alien status. These claims are precluded by the signed and negotiated plea agreement, in which petitioner promised to "not ask for any other adjustment to or reduction in the offense level or for a downward departure from the [following] Guidelines range" and waived any collateral attacks under § 2255. Docket No. 1082 at 6. Nevertheless, the Court will address petitioner's complaints:

### 1.   Drug quantity

Petitioner argues that his counsel's performance was "ineffective at sentencing for failing to make a challenge that Petitioner was responsible for more than 500 kilograms or marijuana based on the government's assertion that the conspiracy involved more than 500 kilograms of marijuana, which were charged and distributed by other defendants during the course of the conspiracy." Pet. Mem. at 22. Petitioner asserts that he was prejudiced because his "base offense was increased by two level[s]." *Id.* at 23. Petitioner does not state what lower amount of marijuana he believes should have been attributed to him.

Petitioner's claim is contradicted by the record. Petitioner admitted in both his plea agreement and at the plea colloquy that the total amount of marijuana attributable to him for purposes of relevant conduct was 590.5 kilograms. Docket No. 1082 at 3; Docket No. 1289 at 14:20-15:5. Moreover, because petitioner's plea agreement was pursuant to Rule 11(c)(1)(c), if defense counsel had argued for a sentence less than 87 months (as provided in the plea agreement), the Court would have been encouraged to reject the plea bargain agreement. The negotiated 87 month sentence also allowed petitioner to avoid two ten-year mandatory minimum counts that were dismissed under the plea agreement.

### 2.      Alien status

Petitioner alleges counsel was ineffective for failing to argue for a lower sentence based on his alien status.  Petitioner argues that his alien status rendered him ineligible for certain Bureau of Prisons programs available to U.S. citizens (such as placement in a minimum security facility or home confinement), and because after he serves his sentence he will face "extra incarceration" while awaiting deportation or other immigration proceedings.

Counsel's performance was neither deficient nor prejudicial for the same reasons stated above.  Moreover, the written plea agreement explicitly stated that deportation was a possible consequence of a guilty plea, and defense counsel stated that he had reviewed "every portion of this agreement together" with petitioner.  Docket No. 1082 at 2; Docket No. 1289 at 10:4-7.  At the plea colloquy, the Court made certain that petitioner was aware of "possible deportation" issues, yet petitioner nevertheless decided to proceed with pleading guilty.  Docket No. 1289 at 5:13-20, 18:1.[8]

### F.      Counsel's failure to discuss possibility of appeal

Petitioner claims that his counsel was ineffective by "failing to consult with Petitioner to file an appeal after the Court impose[d] its sentence."  Pet. Mem. at 32.  Petitioner asserts that if his attorney had consulted with him about filing an appeal, he would have done so.

Counsel has a constitutionally-imposed duty to consult with a criminal defendant client about an appeal when there is reason to think that a rational defendant would want to appeal or that this particular defendant has reasonably demonstrated to counsel that he was interested in appealing.  *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).  A petitioner must show prejudice (*i.e.*, meet the second *Strickland* prong) to be entitled to habeas relief in a failure-to-appeal case.  *Id.* at 483-84.  In *Roe*, the

---

[8]  Petitioner also asserts that counsel was ineffective for failing to argue at sentencing that the sentence of 87 months was unreasonable under 18 U.S.C. § 3553(a) (listing "Factors to be considered in imposing a sentence").  Petitioner believes that counsel's failure to argue for a downward departure based on his alien status resulted in an unreasonable sentence that does not comply with § 3553(a)(6), which provides that in sentencing, the Court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Petitioner's arguments – that an alien is ineligible for certain programs, subject to "extra incarceration" pending deportation, and that a deportable alien faces more restrictions in prison than a U.S. citizen – are the same as petitioner's other sentencing claim, and lack merit for the same reasons.

Court held,

> Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.   In making this determination, courts must take into account all the information counsel knew or should have known. . . .

*Id*. at 480.  The Court continued,

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Id*.

Here, counsel did not have a constitutional duty to consult with petitioner about an appeal. Counsel had no reason to think that a rational defendant in petitioner's position would want to appeal, nor did petitioner reasonably demonstrate to counsel that he was interested in appealing.  The plea agreement waived all appeal rights.  Docket No. 1082 at 3.  The agreement also contained a provision for reinstating all charges, including charges previously barred by statute of limitations, in the event petitioner filed an appeal.  Docket No. 1082 at 5.  At the plea colloquy, the waiver provision was discussed at length.  Docket No. 1289 at 8:13-10:3.   At the end of that discussion, defense counsel stated, "I don't believe he's going to appeal based on the agreement and based on my advice to him." *Id.* at 10:2-3.  The Court summarized the provision for defendant as follows: "What [the prosecutor] is saying here, sir, is that you can't appeal.  If you should appeal, that all kinds of bad consequences are going to kick in based on this agreement."  *Id*. at 10:9-11.  The Court asked petitioner whether he understood, and petitioner answered "Yes, Your Honor."  *Id*. at 10:17-18.  Moreover, as discussed *supra*, petitioner received the sentence for which he had bargained, and thus counsel would have no reason to believe that petitioner wished to appeal.

On this record, petitioner has failed to demonstrate ineffective assistance based on counsel's failure to consult with him about an appeal after the imposition of sentence.

**G.      Cumulative impact**

As petitioner has failed to establish any errors under *Strickland*, petitioner also fails to establish that the cumulative impact of any errors warrants relief.

**IV.      Certificate of appealability**

Petitioner has not made a substantial showing of the denial of a constitutional right, and accordingly the Court does not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(3).

**CONCLUSION**

For the foregoing reasons, petitioner's request for an evidentiary hearing and the petition for writ of habeas corpus are DENIED.  Docket No. 1278 in CR 05-375 SI;

**IT IS SO ORDERED.**

Dated: September 9, 2011

_____
SUSAN ILLSTON
United States District Judge